UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TERI JACKSON,

*Plaintiff*,

v.

DISTRICT OF COLUMBIA, *et al.*,

*Defendants*.

Civil Action No. 25 - 1800 (LLA)

## MEMORANDUM OPINION AND ORDER

Plaintiff Teri Jackson brings this action against the District of Columbia and Nadine Wilburn (collectively, "Defendants") for violations of the federal Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; the D.C. Family and Medical Leave Act ("DCFMLA"), D.C. Code § 32-501 *et seq.*; the D.C. Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 *et seq.*; and the D.C. Whistleblower Protection Act ("DCWPA"), D.C. Code § 1-615.51 *et seq.*  ECF No. 1-1.  Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6).  ECF No. 6.  For the reasons discussed below, the court grants Defendants' motion to dismiss in part and denies it in part.

## I.    FACTUAL BACKGROUND

The following factual allegations drawn from Ms. Jackson's complaint, ECF No. 1-1, are accepted as true for the purpose of evaluating Defendants' motion, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court also takes judicial notice of Ms. Jackson's Equal Employment Opportunity Commission ("EEOC") and D.C. Office of Human Rights ("OHR") materials.  *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018); *see Jackson v. Omniplex World*

*Servs. Corp.*, No. 20-CV-220, 2020 WL 3605655, at *2 n.2 (D.D.C. July 2, 2020) ("Documents from the EEOC and D.C. Office of Human Rights are judicially noticeable and may be considered in resolving a defendant's motion to dismiss without converting it into a motion for summary judgment.").

Ms. Jackson worked at the Office of the Attorney General for the District of Columbia ("OAG") as an Equal Employment Manager from December 2019 to August 2022.  ECF No. 1-1 ¶¶ 5, 29.  She began teleworking full-time in March 2020 due to the COVID-19 pandemic, took maternity and DCFMLA leave from May 2020 to October 2020, and then resumed teleworking until April 2022.  *Id.* ¶ 30.  Ms. Jackson's duties included conducting internal equal employment opportunity ("EEO") investigations and publishing reports of her findings.  *Id.* ¶¶ 7-11.  These reports were reviewed by Ms. Wilburn, who served as Chief Counsel for OAG's Personnel, Labor, and Employment Division and as a Senior Advisor to the Attorney General.  *Id.* ¶¶ 8-10; *see* ECF No. 6, at 4.[1]  The Chief Human Resources Officer ("CHRO") also reviewed Ms. Jackson's reports. ECF No. 1-1 ¶ 8.  The CHRO position was held by Shiria Anderson until August 2021, by Christian Barrera in an acting capacity from August 2021 to March 2022, and by O'ne Dupre beginning in March 2022.  *Id.*

Ms. Jackson alleges that "[f]rom the beginning of her employment," she "observed" Ms. Wilburn engage in a pattern of "making changes to the material facts of her reports to eliminate or limit liability for the OAG."  *Id.* ¶ 9.  Ms. Wilburn "gave directives in the comments of the report[s]" advising Ms. Jackson "to make substantive changes to the Finding and Analysis" sections of her reports.  *Id.* ¶ 10.  Such directives included comments like "You should say

---

[1] Ms. Jackson referred to Ms. Wilburn as "General Counsel" in her complaint, ECF No. 1-1 ¶ 4, but corrected Ms. Wilburn's title in her opposition brief, ECF No. 7, at 3 & n.1.

this . . . ." *Id.* Ms. Jackson believed that these suggestions were intended to limit OAG's liability. *Id.* ¶¶ 9-11.

Ms. Jackson also believed that OAG was failing to comply with District of Columbia statutes and regulations and internal OAG policies. She inquired early in her employment about OAG's use of EEO counselors and were told there were none. *Id.* ¶ 7. While several EEO counselors were listed in an OAG office order, Ms. Jackson alleges that they were not "utilized in any capacity" consistent with OAG's legal obligations. *Id.*; *see id.* ¶¶ 15, 18-19. Ms. Jackson maintains that EEO complaints were "never mediated by EEO Counselors" and that "employees were never given an opportunity to speak with an OAG EEO Counselor to be informed of their rights and options." *Id.* ¶ 12. Ms. Jackson also noticed that OAG would leave investigation reports pending and deprive employees of the exit letters they needed to file formal complaints with OHR. *Id.* ¶¶ 12, 19.

In December 2021 and January 2022, Ms. Jackson "informed her manager about her concern regarding [Ms. Wilburn's] changing the material facts and findings in her reports." *Id.* ¶ 11. She told her manager that she was not "comfortable signing her name on her reports after [Ms. Wilburn] made such changes" and that, because the reports remained open pending her signature, "this issue [had] decreased the pace of her work." *Id.* Also in January 2022, Ms. Jackson reported Ms. Wilburn's "coercion and unethical editing" of the reports to then-acting CHRO Barrera. *Id.* ¶ 13. Mr. Barrera told her he would "look into it," but he did not follow up. *Id.* ¶¶ 13-14. The following month, Ms. Jackson requested a second private meeting with Mr. Barrera, but he denied her request that the meeting be private. *Id.* ¶ 14. Instead, he forwarded Ms. Jackson's virtual meeting invitation to Ms. Wilburn shortly before the start of the meeting, and Ms. Jackson "declined to express her concerns while [Ms. Wilburn] remained on the call." *Id.*

Ms. Jackson also expressed her concerns to the Solicitor General, who forwarded them to Chief Deputy Attorney General Vikram Swaruup.  *Id.*

On February 22, 2022, Ms. Jackson spoke with Mr. Swaruup.  *Id.* ¶ 15.  She reiterated her concerns and alleged that OAG was violating municipal regulations and the DCHRA.  *Id.*  Upon his request, she provided him with written examples of "coercion" and unethical editing by Ms. Wilburn, along with copies of EEO policy with annotations indicating areas of perceived noncompliance.  *Id.* ¶ 16.  In a follow-up meeting, Mr. Swaruup explained "that he would be directing Ms. Jackson to work with the new CHRO, O'ne Dupre[,] to resolve her EEO compliance and ethics concerns."  *Id.* ¶ 17.  In March, Ms. Jackson reported her concerns to Mr. Dupre.  *Id.* ¶ 21.

Mr. Dupre began serving as Ms. Jackson's manager in March 2022.  *Id.*  In his first four weeks, he (1) "[r]epeatedly altered Ms. Jackson's telework agreement"; (2) forged her signature to alter her telework agreement; (3) "[w]as unduly critical of her work"; (4) "[o]verloaded [her] with new cases"; (5) summoned her to the office "as he pleased"; (6) called her "derogatory names" in emails on which her colleagues were copied; (7) denied her the presence of an EEO Counselor in an April 4, 2022 meeting; (8) held her in that meeting for two hours despite her telling him that she "felt uncomfortable and needed to pick up her baby from daycare"; (9) altered her timesheet to reduce her pay; and (10) denied her COVID care leave.  *Id.* ¶ 22.

On April 18, 2022, Ms. Jackson requested "temporary ongoing medical leave, intermittent medical leave, [and] 100% telework" under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and the FMLA.  *Id.* ¶ 23.  OAG approved her FMLA leave request on April 21, 2022, effective from April 18 through June 6.  *Id.*  OAG employees and contractors contacted Ms. Jackson "numerous times" while she was on leave.  *Id.* ¶ 24.  In May 2022, Ms. Wilburn

co-drafted two letters requesting additional information regarding Ms. Jackson's ADA request, which her physician provided. *Id.* ¶¶ 25-26. On June 9, 2022, Ms. Jackson received a notice—also co-drafted by Ms. Wilburn and OAG's FMLA/ADA Coordinator—denying her ADA accommodation request for full-time telework. *Id.* ¶ 27. At the same time, an officewide order provided that any employee, regardless of disability, would be allowed to telework full-time if the employee met certain criteria. *Id.* ¶ 24.

Ms. Jackson was scheduled to participate in an investigative hearing on behalf of a former OAG employee upon her return from FMLA leave, and she alleges that she would have testified about her concerns with Ms. Wilburn at that hearing. *Id.* ¶¶ 28, 30. Instead, Ms. Jackson was placed on administrative leave the day she returned from FMLA leave. *Id.* ¶ 30. "[S]hortly thereafter," she received a notice that she was being terminated, with an effective termination date of August 31, 2022. *Id.* ¶¶ 28, 59. Ms. Jackson was assigned a "hearing/appealing" officer who had previously worked at OAG and with Ms. Wilburn, and he recommended that Ms. Jackson be terminated. *Id.* ¶ 28. Ms. Jackson was formally terminated effective August 31, 2022. *Id.* ¶ 35.

## II.    PROCEDURAL HISTORY

Ms. Jackson filed an administrative complaint with OHR in August 2022. *Id.* ¶ 29. In April 2023, she filed a charge alleging violations of the DCFMLA, ECF No. 6-2, and she cross-filed a charge with OHR and the EEOC alleging violations of the DCHRA and ADA, ECF No. 6-1.[2] Ms. Jackson received a right-to-sue letter on her DCHRA and ADA charge on October 1, 2024. ECF No. 7-2; *see* ECF No. 9, at 2 n.1.

---

[2] When citing ECF Nos. 6-1, 6-2, and 6-4, the court uses the page numbers generated by CM/ECF rather than any internal pagination.

In November 2024, Ms. Jackson filed suit in the Superior Court of the District of Columbia alleging violations of the DCFMLA, DCHRA, and DCWPA. Compl. ¶¶ 30-53, *Jackson v. District of Columbia*, No. 2024-CAB-7077 (D.C. Super. Ct. Nov. 8, 2024). The following month, OHR dismissed Ms. Jackson's DCFMLA complaint "in an exercise of its prosecutorial discretion" in light of her suit. ECF No. 6-4, at 2-3. Ms. Jackson filed an amended complaint in May 2025, which added a claim under the federal FMLA. ECF No. 1-1. Defendants thereafter removed the case to this court. ECF No. 1. In July 2025, Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).[3] ECF No. 6. The matter is fully briefed. *See* ECF Nos. 6, 7, 9.

### III.    LEGAL STANDARD

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion under Rule 12(b)(6), a court accepts all well-pleaded factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of

---

[3] Defendants also moved for dismissal under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, summary judgment under Rule 56, arguing that Ms. Jackson had not exhausted her administrative remedies for her DCHRA claim (Count II) because her OHR charge was still pending. ECF No. 6, at 4, 13-16, 20-21. Defendants withdrew that argument in their reply brief after Ms. Jackson provided a copy of her right-to-sue letter in her opposition brief. ECF No. 9, at 2 n.1; *see* ECF No. 7-2. Accordingly, only Defendants' motion to dismiss under Rule 12(b)(6) is before the court.

the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice.  *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice."  *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).  As noted, the court may also take judicial notice of the plaintiff's EEOC and OHR materials without converting a motion to dismiss into one for summary judgment.  *Jackson*, 2020 WL 3605655, at *2 n.2.

## IV.    DISCUSSION

Ms. Jackson raises claims of retaliation under the federal FMLA (Count IV), ECF No. 1-1 ¶¶ 54-62; interference and retaliation under the DCFMLA (Count I), *id.* ¶¶ 31-38; failure to accommodate and retaliation under the DCHRA (Count II), *id.* ¶¶ 39-46; and retaliation under the DCWPA (Count III), *id.* ¶¶ 47-53.  Defendants move to dismiss her FMLA retaliation claim as untimely, ECF No. 6, at 8-9, and for failure to state a claim, *id.* at 10-11; her DCFMLA interference claim as untimely, *id.* at 11, and for failure to state a claim, *id.* at 12-13; her DCHRA retaliation claim for failure to state a claim, *id.* at 16; and her DCWPA retaliation claim as untimely, *id.* at 16-17, and for failure to state a claim, *id.* at 17-18.  Defendants do not seek dismissal of Ms. Jackson's DCFMLA retaliation claim, *see generally id.*, and they have withdrawn their request for dismissal of or summary judgment on Ms. Jackson's DCHRA

failure-to-accommodate and retaliation claims for failure to exhaust administrative remedies, *see id.* at 13-16; ECF No. 9 at 2 n.1; *see also supra* n.3.[4]  The court addresses each argument in turn.

### A.    FMLA (Count IV)

The court begins with Ms. Jackson's claim of retaliation under the federal FMLA (Count IV), because it serves as the basis for the court's jurisdiction.  28 U.S.C. §§ 1331, 1441(a); *see* ECF No. 1, at 1-2 (explaining that Ms. Jackson's FMLA claim arises under federal law).  The FMLA "entitles eligible employees to take unpaid leave for family and medical reasons."  *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 160 (D.C. Cir. 2015).  "An employer may be held liable for violating the FMLA" by interfering with the employee's rights to FMLA leave or—as relevant here—by taking "adverse action against the employee because the employee took leave or otherwise engaged in activity protected by the Act."  *Holloway v. D.C. Gov't*, 9 F. Supp. 3d 1, 7 (D.D.C. 2013); *see* 29 U.S.C. § 2615(a).  Ms. Jackson alleges that Defendants retaliated against her for taking FMLA leave from April 2022 to June 2022 "by requiring unnecessary documentation," "harassing" her while she was on leave, placing her on administrative leave following her return from FMLA leave in June 2022, and terminating her.  ECF No. 1-1 ¶ 59.  Defendants argue that Ms. Jackson's FMLA retaliation claim is untimely and that certain aspects of it fail as a matter of law.  ECF No. 6, at 8-11.

---

[4] Defendants also argue that the court should grant their motion to dismiss as conceded because Ms. Jackson did not file a timely opposition.  ECF No. 9, at 2; *see* Loc. Civ. R. 7(b) ("If . . . a memorandum [in opposition] is not filed within the prescribed time, the Court may treat the motion as conceded.").  In light of the "weighty preference in favor of deciding cases on their merits when applied to a case-dispositive motion," *Cohen v. Bd. of Trs. of the Univ. of the D.C.*, 819 F.3d 476, 483 (D.C. Cir. 2016), the court declines to do so.

### 1.    Timeliness of Ms. Jackson's FMLA retaliation claim

Generally, a plaintiff must bring an FMLA claim "not later than 2 years after the date of the last event constituting the alleged violation."  29 U.S.C. § 2617(c)(1).  However, a plaintiff may avail herself of an extended three-year statute of limitations if her employer has committed "willful" violations of the FMLA.  *Id.* § 2617(c)(2).  A violation is "willful" if "an employer . . . kn[ew] its conduct to be wrong or ha[d] shown reckless disregard for the matter." *Cooper v. Henderson*, 174 F. Supp. 3d 193, 205 (D.D.C. 2016) (quoting *Hodge v. United Airlines*, 666 F. Supp. 2d 14, 23 (D.D.C. 2009)).  "To adequately plead a willful violation [of the FMLA], 'allegations of knowledge and intentionality are sufficient.'"  *Murphy v. District of Columbia*, 390 F. Supp. 3d 59, 67 (D.D.C. 2019) (quoting *Hodge*, 666 F. Supp. 2d at 23).  Allegations can be "express or implied."  *Hodge*, 666 F. Supp. 2d at 23 (explaining that a plaintiff need not use the "magic word" of "willful" to be entitled to the three-year statute of limitations); *cf. Pressley v. Mgmt. Support Tech., Inc.*, No. 22-CV-2262, 2023 WL 5206107, at *13 (D.D.C. Aug. 14, 2023) (holding that a plaintiff's mere use of the word "willfully" triggered the three-year statute of limitations (internal quotation marks omitted)).  The court must ask whether "[the plaintiff] believes [the employer's] violation of the statute was willful," *Hodge*, 666 F. Supp. 2d, at 23, and in doing so, it is appropriate to consider the "overall arc" of the complaint, *Vick v. Brennan*, 172 F. Supp. 3d 285, 300 (D.D.C. 2016).

The parties agree that Ms. Jackson brought her FMLA claim beyond the ordinary two-year limitations period, such that it is timely only if she has sufficiently alleged willful violations.  ECF No. 6, at 8-9; ECF No. 7, at 9-10.  Ms. Jackson uses the word "willful" in describing her FMLA allegations, ECF No. 1-1 ¶¶ 59, 62, but Defendants argue that her "allegations do not support willfulness" because she "has not alleged 'an intentional pattern of harassment and retaliation,'"

9

ECF No. 6, at 9 (quoting *Cooper*, 174 F. Supp. 3d at 206).  The court concludes that Ms. Jackson's allegations of willfulness are sufficient to survive a motion to dismiss her FMLA claim on timeliness grounds.

"At the motion to dismiss stage, dismissal on statute-of-limitations grounds is proper 'only if the complaint on its face is conclusively time-barred.'"  *Capitol Servs. Mgmt., Inc. v. Vesta Corp.*, 933 F.3d 784, 788 (D.C. Cir. 2019) (quoting *Commonwealth Land Title Ins. Co. v. KCI Techs., Inc.*, 922 F.3d 459, 464 (D.C. Cir. 2019)).  Accepting her allegations as true, Ms. Jackson has adequately pleaded willfulness so as to avail herself of the FMLA's three-year statute of limitations.  Specifically, Ms. Jackson asserts that "Defendants' actions were willful because they were taken immediately after Plaintiff took FMLA leave and *were intended to punish her* for taking FMLA leave."  ECF No. 1-1 ¶ 59 (emphasis added).  This suffices to show that Ms. Jackson "believe[d]" that Defendants' conduct was intentionally retaliatory.  *Hodge*, 666 F. Supp. 2d at 23.  That she was placed on administrative leave and terminated immediately following her FMLA leave also supports an inference of willfulness.  *See Vick*, 172 F. Supp. 3d at 300 (inferring willfulness where the employer denied additional FMLA leave to which the plaintiff was entitled with no reason given).  Because Ms. Jackson alleges willful violations of the FMLA, the court will treat her claim as timely at this stage and turn to the merits.

### 2.    Merits of Ms. Jackson's FMLA retaliation claim

To state a claim for retaliation under the FMLA, Ms. Jackson must plausibly allege "(1) the exercise of protected FMLA activity; (2) an adverse employment decision; and (3) a causal connection between the protected activity and the adverse action."  *Waggel v. George Washington Univ.*, 957 F.3d 1364, 1375 (D.C. Cir. 2020).  Defendants do not dispute that Ms. Jackson has sufficiently alleged the first and third prongs, ECF No. 6, at 10-11, and they challenge the adverse

action requirement only as it pertains to her allegation that they "requir[ed] unnecessary documentation" for her ADA request as retaliation for her taking FMLA leave, *id.* at 10 (quoting ECF No. 1-1 ¶ 59).

In her opposition, Ms. Jackson does not argue that the request for documentation itself was an adverse action, only that it was "part of a broader retaliatory effort that culminated in her discharge." ECF No. 7, at 11 ("Plaintiff does not base her FMLA retaliation claim exclusively on Defendants' documentation request."). This is a wise concession, because it is well established that "an employer's request for medical documentation for the purpose of . . . determining an appropriate accommodation is not an adverse employment action" unless it causes "some tangible effect on the employee's terms and conditions of employment or other material harm." *Koch v. Schapiro*, 699 F. Supp. 2d 3, 14 (D.D.C. 2010). Ms. Jackson therefore may not proceed on an FMLA retaliation claim based on Defendants' request for documentation alone, but she may rely on the allegation concerning documentation to the extent it played some role in her ultimate termination.[5] Accordingly, the court will deny Defendants' motion to dismiss Count IV.

---

[5] To the extent that Ms. Jackson uses the term "hostile work environment" in her OHR charge, ECF No. 6-1, at 4, and in her complaint, ECF No. 1-1 ¶¶ 6, 21, 30, she did not plead it as a standalone count. In any event, hostile work environment claims are not cognizable under the FMLA or DCFMLA. *See Hollabaugh v. Off. of the Architect of the Capitol*, 847 F. Supp. 2d 57, 65 (D.D.C. 2012) (noting that "courts recognize two distinct theories of recovery that arise under the FMLA statute[:] entitlement (also called interference) pursuant to 29 U.S.C. § 2615(a)(1), and retaliation (also called discrimination) pursuant to 29 U.S.C. § 2615(a)(2)" (quoting *Ghawanmeh v. Islamic Saudi Acad.*, 672 F. Supp. 2d 3, 14 n.3 (D.D.C. 2009))); *Wash. Convention Ctr. Auth. v. Johnson*, 953 A.2d 1064, 1075 (D.C. 2008) (noting that "[l]ike its federal counterpart, the DCFMLA recognizes two theories for recovery").

### B.      DCFMLA (Count I)

"The DCFMLA is the District of Columbia's analog to the FMLA." *Murphy*, 390 F. Supp.

3d at 67.  It provides that "any employee who becomes unable to perform the functions of the

employee's position because of a serious health condition shall be entitled to medical leave for as

long as the employee is unable to perform the functions."  D.C. Code § 32-503(a).  Ms. Jackson

alleges that Defendants "interfered with [her DC]FMLA rights and retaliated against [her] for

taking [DC]FMLA leave."  ECF No. 1-1 ¶ 35.  Defendants argue that her DCFMLA interference

claim should be dismissed because it is untimely and because she fails to state a claim on which

relief can be granted.  ECF No. 6, at 11-13.[6]  The court concludes that the claim is timely but that

Ms. Jackson fails to state a claim.

### 1.      Timeliness of Ms. Jackson's DCFMLA interference claim

Claims under the DCFMLA are subject to a one-year statute of limitations, D.C. Code

§ 32-510(b), but a timely OHR complaint "shall toll the deadline by which an employee may file

a civil action" under the DCFMLA "during all times that the employee has a complaint pending,"

4 D.C.M.R.  § 1610.3.   Here, Ms. Jackson filed  a  formal DCFMLA charge with OHR in

April 2023, ECF No. 6-2, and commenced this action in November 2024, while the OHR

complaint was still pending, Compl., *Jackson v. District of Columbia*, No. 2024-CAB-7077

(D.C. Super. Ct. Nov. 8, 2024).   This would place her claims within the one-year statute of

---

[6] Defendants curiously do not seek dismissal of Ms. Jackson's DCFMLA retaliation claim.  At one point, Defendants seem to suggest that Ms. Jackson did not bring a DCFMLA retaliation claim in her amended complaint, ECF No. 6, at 11 ("Plaintiff clearly brings an interference claim under the DCFMLA, not a retaliation claim."), but that suggestion is belied by the language of the amended complaint, *see* ECF No. 1-1 ¶ 35 (alleging that "Defendant interfered with Plaintiff's [DC]FMLA rights *and retaliated* against Plaintiff for taking [DC]FMLA leave" (emphasis added)). Accordingly, Ms. Jackson may proceed on her DCFMLA retaliation claim.

limitations if tolling applies.  Defendants argue that the OHR complaint did not toll the time for Ms. Jackson to file a DCFMLA *interference* claim because she only raised a claim of DCFMLA *retaliation* before OHR.  ECF No. 6, at 11; ECF No. 9 at 4-5.  Ms. Jackson responds that tolling "applies to all claims arising out of the same facts or transaction as the administrative charge—even if the specific legal theory (e.g., interference versus retaliation) is not verbatim in the charge." ECF No. 7, at 12.  The court disagrees with Ms. Jackson's legal argument, but it concludes as a factual matter that Ms. Jackson raised both DCFMLA interference and retaliation claims before OHR.

In *Murphy*, the court held that the plaintiff's DCFMLA retaliation claim concerning certain conduct was untimely where the plaintiff had advanced a DCFMLA interference claim before OHR but had not separately alleged retaliation.  390 F. Supp. 3d at 69 (explaining that because the plaintiff had failed to adequately raise his DCFMLA retaliation (as opposed to interference) claim in his administrative charge, "the DCFMLA retaliation claim was never 'pending' before OHR, [and] the limitations period was not tolled").  Drawing on principles of administrative exhaustion, the court explained that, to get the benefit of tolling, "the substance of [the] claim . . . must fall within the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination."  *Id.* at 66 (internal quotation marks omitted) (quoting *Marshall v. Fed. Express. Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997)).

The court agrees with the *Murphy* court that a plaintiff must separately allege DCFMLA interference and retaliation in her OHR charge in order to toll the statute of limitations for both claims.  DCFMLA interference and retaliation claims are analytically distinct, *see Wash. Convention Ctr. Auth. v. Johnson*, 953 A.2d 1064, 1075-76 (D.C. 2008); *Hamilton v. Howard*

*Univ.*, 960 A.2d 308, 317 (D.C. 2008), and there is no reason to believe that OHR would investigate a claim that is not squarely before it, *see Marshall*, 130 F.3d at 1098.

Determining whether Ms. Jackson raised a claim of DCFMLA interference before OHR is a closer question.  Before OHR, Ms. Jackson broadly alleged that "Respondent has *retaliated* against [her] for exercising [her] rights under the [DCFMLA]."  ECF No. 6-2, at 2 (emphasis added).  In the first section of her OHR complaint—titled "DCFMLA Retaliation (Discharge)"—she details her request for medical leave in April 2022 and her subsequent notice of termination in June 2022.  *Id.* (arguing that she was terminated "in *retaliation* for . . . requesting and taking DCFMLA leave from April 18, 2022 through June 6, 2022" (emphasis added)).  In the second section of her complaint—titled "DCFMLA Hostile Work Environment and Terms and Conditions"—Ms. Jackson details a series of events that "exacerbated [her] disability" during her FMLA leave, such as being "contacted repeatedly on a weekly basis," as well actions when she returned from leave, such as being placed on administrative leave and receiving a notice of termination.  *Id.*  While these allegations could suggest a claim for DCFMLA interference, Ms. Jackson confuses matters by alleging that these actions were "*in retaliation* for . . . requesting and taking DCFMLA leave."  *Id.* at 3 (emphasis added).

Ultimately, however, the court is persuaded that Ms. Jackson advanced a DCFMLA interference claim before OHR because *OHR* understood her to be making such a claim.  Specifically, in its administrative dismissal letter, OHR characterized Ms. Jackson's claims as "interference with her rights under the DCFMLA *and* retaliatory discharge in violation of the DCFMLA."  ECF No. 6-4, at 3 (emphasis added).  OHR then explained that it was dismissing the matter because it "ha[d] since learned that Complainant ha[d] included her DCFMLA *claims* in a D.C. Superior Court complaint."  *Id.*  (emphasis added).  This indicates that OHR was on notice

of, and thus "reasonably . . . expected to investigate," both interference and retaliation under the DCFMLA before Ms. Jackson filed suit.  *Marshall*, 130 F.3d at 1098.  The court accordingly concludes that the interference claim is timely and will proceed to the merits.

### 2.    Merits of Ms. Jackson's DCFMLA interference claim

To state a claim for interference, a plaintiff must show "(1) employer conduct that reasonably tends to interfere with, restrain, or deny the exercise of [DCFMLA] rights, and (2) prejudice arising from the interference." *Waggel*, 957 F.3d at 1376.  In support of the first prong, Ms. Jackson alleges that Defendants "requir[ed] unnecessary documentation for taking leave" and "harass[ed]" her while she was on leave.  ECF No. 1-1 ¶ 35.[7]  Neither allegation is sufficient to state a claim for FMLA interference.

To begin, Defendants' request for "unnecessary documentation," *id.*, was to support Ms. Jackson's separate request for an ADA accommodation of full-time telework, *see id.* ¶¶ 25-26; it had nothing to do with her request to take FMLA leave from April to June 2022, which Defendants promptly granted, *see id.* ¶ 23 (stating that Ms. Jackson's FMLA application was granted three days after being submitted).  To be sure, the D.C. Circuit does not require that an employer "actually prevent" an employee from taking protected leave to make out a claim for interference.  *Gordon*, 778 F.3d at 165-66 (finding interference where "officials expressed hostility

---

[7] As noted, in her OHR complaint, Ms. Jackson also alleged DCFMLA interference based on being placed on administrative leave when she returned and receiving a notice of termination, *see* ECF No. 6-2, at 2-3, but she does not advance these claims in support of a DCFMLA interference claim in her amended complaint.  In any event, actions taken *after* a plaintiff returns from DCFMLA leave generally cannot support a claim that the defendant interfered with the plaintiff's leave. *See Wash. Convention Ctr. Auth.*, 953 A.2d at 1076 (noting that interference arises when an employer impedes the "right to medical leave or to reinstatement following the leave" (quoting *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002))).

towards requests for . . . leave generally and [the plaintiff's] request in particular"). Nevertheless, courts are less likely to find interference where leave is promptly granted. *See Murphy*, 390 F. Supp. 3d at 69 (finding no DCFMLA interference where the leave request was granted after two days and the plaintiff offered no additional evidence of interference); *Williams v. Verizon Wash., D.C. Inc.*, 304 F. Supp. 3d 183, 193 (D.D.C. 2018) (finding no interference where the plaintiffs took requested leave "without hindrance").

Further, Ms. Jackson's bare assertion that she was "contacted numerous times" by OAG employees and contractors while on FMLA leave, ECF No. 1-1 ¶ 24, without further detail, does not allege the kind of interference that would cause "a reasonable employee . . . [to] be discouraged from exercising [DC]FMLA rights," *Waggel*, 957 F.3d at 1377. "Courts have recognized that 'work requests during [DC]FMLA leave can constitute interference.'" *Jiggetts v. Cipullo*, 774 F. Supp. 3d 168, 210 (D.D.C. 2025) (quoting *Mammen v. Thomas Jefferson Univ.*, 462 F. Supp. 3d 518, 525 (E.D. Pa. 2020)) (finding a genuine issue of fact as to whether assigning an employee "more work than she could complete" while on intermittent leave and requiring the employee to work outside of her scheduled hours amounted to interference). However, the only facts Ms. Jackson alleges are that she received two letters asking for more information regarding her ongoing ADA accommodation request. ECF No. 1-1 ¶¶ 25-26.[8] She does not allege that she was asked to complete work tasks while on leave. Minimal contact for administrative tasks, or, as here, contacting Ms. Jackson for information related to an accommodation that she affirmatively sought,

---

[8] In her OHR charge, Ms. Jackson alleged that she was "contacted repeatedly on a weekly basis . . . by an Equal Employment Opportunity (EEO) Investigator externally contracted by the Office of Human Rights (OHR) . . . to respond to emails and participate in interviews regarding [her] EEO complaint," ECF No. 6-2, at 2, but actions by an independent third party clearly cannot support an interference claim against Defendants.

does not rise to the level of interference.  *See O'Donnell v. Passport Health Commc'ns, Inc.*, 561 F. App'x 212, 217-18 (3d Cir. 2014) (holding that an employer's communications acknowledging medical leave and continuing ongoing salary negotiations did not constitute FMLA interference). Accordingly, the court will dismiss Ms. Jackson's DCFMLA interference claim.[9]

### C.    DCHRA (Count II)

"The DCHRA makes it unlawful for an employer to refuse to hire, discharge, or otherwise discriminate against an individual 'wholly or partially for a discriminatory reason based upon [an] actual or perceived . . . disability.'"  *Badwal v. Bd. of Trs. of Univ. of D.C.*, 139 F. Supp. 3d 295, 308 (D.D.C. 2015) (alterations in original) (quoting D.C. Code § 2-1402.11(a)(1)).  Employers also cannot "retaliate against . . . any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected under this [Act]."  D.C. Code § 2-1402.61(a).

Ms. Jackson alleges that Defendants violated the DCHRA by (1) denying her request for full-time telework as a reasonable accommodation for her disability, (2) retaliating against her "for engaging in protected activity by requesting a reasonable accommodation and reporting violations of District of Columbia employment laws and regulations," and (3) retaliating against her for requesting a reasonable accommodation by terminating her employment.  ECF No. 1-1 ¶ 43. Defendants challenge only Ms. Jackson's second allegation, which they construe as a claim that

---

[9] Because the court finds that Ms. Jackson fails to state a claim for DCFMLA interference, it need not reach Defendants' argument that such a claim cannot lie against Ms. Wilburn.  ECF No. 6, at 13; *cf. Coulibaly v. Kerry*, 130 F. Supp. 3d 140, 150 n.10 (D.D.C. 2015) ("The question of whether the FMLA permits actions against individuals as opposed to only employers is the subject of a circuit split[.]").

the denial of her request for a reasonable accommodation was itself retaliation for requesting an accommodation. *See* ECF No. 6, at 16; ECF No. 9, at 11. In Defendants' view, that claim must be dismissed as duplicative of her failure-to-accommodate claim. ECF No. 6, at 16 (citing *Floyd v. Lee*, 968 F. Supp. 2d 308, 334 (D.D.C. 2013)). Ms. Jackson maintains that this claim is distinct from her failure-to-accommodate claim because "does not simply allege that the denial of her accommodation request was retaliatory in and of itself." ECF No. 7, at 17. "Rather, she alleges that Defendants denied her request for telework not because it was substantively unjustified, but because she had *previously* engaged in protected activity—including reporting concerns about the conduct of a senior official and exercising rights under the FMLA and ADA." *Id.* (emphasis added).

The court agrees with Defendants that the denial of a request for a reasonable accommodation cannot itself form the basis of both a failure-to-accommodate claim and a retaliation claim. *See Floyd*, 968 F. Supp. 2d at 334. But it also agrees with Ms. Jackson that she is not raising a duplicative claim and instead is alleging that the denial of her request for a reasonable accommodation was in retaliation for "*previous*[]" protected activity. ECF No. 7, at 17 (emphasis added). To be sure, Ms. Jackson's allegation is not a model of clarity and, at a later stage of the proceeding, Ms. Jackson will need to identify precisely what protected activity forms the basis of her claim that the denial of her request for a reasonable accommodation was retaliatory. At this stage, however, it is sufficient that she is pointing to something other than the denial of the request itself. *See Solomon v. Vilsack*, 763 F.3d 1, 14 (D.C. Cir. 2014) (recognizing that a plaintiff could bring a retaliation claim premised on the denial of an accommodation request following EEO activity). Accordingly, the court will deny Defendants' motion to dismiss this aspect of Count II.

18

**D.    DCWPA (Count III)**

Ms. Jackson alleges that Defendants violated her rights under the DCWPA, which protects employees from retaliation for making certain protected disclosures.  ECF No. 1-1 ¶¶ 47-53. Defendants argue that this claim is time-barred and that Ms. Jackson fails to state a claim.  ECF No. 6, at 16-19.  The court agrees that Ms. Jackson's DCWPA claim is untimely and will dismiss it on that basis.

DCWPA claims must be "filed within 3 years after a violation occurs or within one year after the employee first becomes aware of the violation, whichever occurs first." D.C. Code § 1-615.54(a)(2).  "Courts presume that an employee becomes aware of the violation at the time that the adverse employment act occurs," *Clayton v. District of Columbia*, 931 F. Supp. 2d 192, 203 (D.D.C. 2013), which would be, at the latest, Ms. Jackson's August 2022 termination, *see* ECF No. 1-1 ¶ 29; ECF No. 6, at 16.  Accordingly, Ms. Jackson was required to file suit no later than August 2023, but she did not file her complaint until November 2024.  Compl., *Jackson v. District of Columbia*, No. 2024-CAB-7077 (D.C. Super. Ct. Nov. 8, 2024).

"However, an employee may argue that she did not learn that the action was retaliatory until some later date, and thus, the one-year statutory period began later."  *Clayton*, 931 F. Supp. 2d at 203; *see Payne v. District of Columbia*, 808 F. Supp. 2d 164, 171 (D.D.C. 2011) (noting that the plaintiff could have claimed that he did not realize his termination was retaliatory when it occurred).  In her opposition, Ms. Jackson argues that "while she was informed of her termination in the summer of 2022, the basis for that decision—including the retaliatory motive connected to her protected disclosures—was not immediately known to her."  ECF No. 7, at 19.  The problem for Ms. Jackson is that the allegations in her complaint and OHR filings contradict this assertion. In her complaint, Ms. Jackson explains that she was terminated in August 2022, and she alleges

19

that, also in August 2022, she began the process of filing a charge with OHR, which culminated in her April 2023 formal OHR complaint alleging retaliation.  ECF No. 1-1 ¶ 29; *see* ECF No. 6-1. Ms. Jackson's OHR complaint describes, in detail, the timeline of her allegedly protected disclosures and her belief that Defendants retaliated against her for making them.  ECF No. 6-1, at 3 ("I believe that Respondent terminated my employment in retaliation for my opposition to unlawful practices [and] complaints about Respondent's failure to have EEO Counselors . . . ."). This indicates that Ms. Jackson knew by April 2023—at the latest—of the basis for her DCWPA claim, but she did not file suit until nearly a year-and-a-half later in November 2024.  And, unlike some of her other claims, Ms. Jackson's DCWPA claim was not tolled during the pendency of her OHR proceedings.  *Ruffin v. District of Columbia*, 662 F. Supp. 3d 1, 11 (D.D.C. 2023) ("The DCWPA, however, includes no such tolling provision (nor any provision providing for the filing of DCWPA claims with OHR."), *on reconsideration*, No. 22-CV-2341, 2023 WL 10553598 (D.D.C. June 16, 2023).[10]

## V.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants' Motion to Dismiss, ECF No. 6, is **GRANTED** to the extent that Count III is **DISMISSED**, and it is otherwise **DENIED**.  It is further **ORDERED** that Defendants shall file an answer to Counts I, II, and IV of

---

[10] Ms. Jackson also adverts to "equitable tolling principles" and "the continuing violation doctrine," ECF No. 7, at 19-20, but she does not substantiate the former and fails to explain how the latter would render her DCWPA claim timely.

Plaintiff's Amended Complaint, ECF No. 1-1, on or before April 10, 2026.  *See* Fed. R. Civ.

P. 12(a)(4)(A).

                                          _____

                                          LOREN L. ALIKHAN
                                          United States District Judge

Date:   March 27, 2026